UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DEBRA COTTINGHAM and IMANI SCOTT,

                              Plaintifffs,

              -against-

THE CITY OF NEW YORK; DETECTIVE NOVONIL
CHOWDHURY, Shield 2078, NARCOTICS BOROUGH
QUEENS SOUTH; DETECTIVE SEKOU BOURNE,
Shield 5941, NARCOTICS BOROUGH QUEENS SOUTH;
and JOHN and JANE DOES 1-10,

                              Defendants.
-------------------------------------------------------------------------X

21 CV **3372**

COMPLAINT

JURY TRIAL DEMANDED

      Plaintiffs, by their attorney, Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

### NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including an illegal entry into and search of a dwelling by employees of the New York City Police Department (NYPD).

### JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### PENDENT JURISDICTION

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its

pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On April 8, 2021, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York, via Certified Mail # 7012 1010 0000 8722 1037, pursuant to § 50-e of the General Municipal Law.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## JURY DEMAND

9. Plaintiffs demand trial by jury in this action.

## PARTIES

10. Plaintiffs are both citizens of the United States and residents of the State of New York.

11. Plaintiff Debra Cottingham, age 58, is the owner and resident of the house in the Laurelton neighborhood of Queens County, New York, where the NYPD raid that is the subject of this lawsuit took place: 130-59 229th Street, Laurelton, NY 11413.

12. Plaintiff Imani Scott, age 30, is the daughter of Debra Cottingham. She is also a resident of her mother's house where the NYPD raid that is the subject of this lawsuit took place.

13. Plaintiffs Debra Cottingham and Imani Scott are both Black women.

14. Plaintiff Debra Cottingham is a retired New York City Corrections Officer.

15. Plaintiffs Imani Scott operates a private business as a technician fitting eyelashes.

16. Neither Debra Cottingham nor Imani Scott have any criminal record whatsoever.

Neither has ever been arrested or convicted of any criminal offense.

17. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

18. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers.

19. At all times relevant herein, defendants Novonil Chowdhury, Shield 2078, and Sekou Bourne, Shield 5941, were NYPD detectives, assigned to Narcotics Borough Queens South, who plaintiffs believe were the officers in charge of the raid.

20. At all times relevant herein, John and Jane Does 1-10 were NYPD officers, detectives, or supervisors who authorized, ordered, participated in or were otherwise involved pre-execution planning and/or execution and/or post-execution critique of the raid.

21. At all times relevant herein, defendants Chowdhury, Bourne and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

22. At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

23. On Friday, March 19, 2021, defendants broke through the door of the house at 130-59 229th Street, Laurelton, NY 11413 with a battering ram.

24. Defendants broke through the door at approximately 6:00 A.M.

25. Defendants did not knock or identify themselves before breaking into the dwelling.

26. The officers were dressed in tactical gear and had firearms drawn and pointed at Ms.

Cottingham when they encountered her.

27. Approximately 10 officers, most of whom are Caucasian, participated in the raid along with a German Sheppard.

28. Ms. Cottingham, dressed only in pajamas, exited her upstairs bedroom to ascertain what was happening.

29. Ms. Cottingham was immediately handcuffed and told by defendant Bourne that she was under arrest.

30. The police officers searched house extensively between approximately 6:00 A.M. and 7:30 A.M.

31. The officers harmed and destroyed plaintiffs' property during the search and left the dwelling in great disarray.

32. The officers, unaware that Ms. Cottingham was a retired NYC Corrections officer and was licensed to possess two guns, did not release her from handcuffs until they verified by telephone that she was licensed to possess the firearms.

33. No arrests were made.

34. No contraband sought by the officers as justification for the raid was recovered.

35. Defendants claimed that they were looking for drugs and drug money allegedly kept in the house by KaShawn Parke ("Shawnee"), age 25, a son of Ms. Cottingham's boyfriend.

36. Shawnee had been evicted from plaintiffs' house in June 2018 after he was caught stealing from both Ms. Cottingham and Ms. Scott, and at that time the locks of the house had been changed to make sure that he never bothered them again.

37. Shawnee's only time in the house since then occurred in January 2021 when he was there with his father for only approximately 10 minutes.

38. Shawnee has not been to plaintiffs' Laurelton house at any other time since June 2018. He was residing with a grandmother in Far Rockaway from June 2018 – September 2020, and his current residence is unknown to plaintiffs

39. Neither Ms. Cottingham nor Ms. Scott have had anything to do with Shawnee since they evicted him from their house in June 2018.

40. Ms. Scott was not present at the time of the raid, having spent the night at her boyfriend's dwelling.

41. Defendants ransacked Ms. Scott's bedroom thoroughly.

42. Defendants claimed that Ms. Scott was an associate of Shawnee in drug trafficking and was laundering drug money for him.

43. Defendants found a key for a safe in Ms. Scott's room, opened the safe, and found approximately $46,000 in cash in the safe. The money was from Ms. Scott's business, which is operated on a cash basis, and she has detailed business records to prove its origin. Defendants nonetheless confiscated the money.

44. Defendants advised that if Ms. Scott went to the 105th precinct within an hour she could retrieve the funds, but when she arrived at the precinct the police refused to return it to her.

45. Ms. Scott was never arrested.

46. By letter dated April 6, 2021, the NYPD Legal Bureau advised Ms. Scott that her funds would be returned to her by a check that she could obtain from the NYPD's Queens Property

Clerk's office within approximately 20 days.

47. In accordance with that that determination by the NYPD Legal Bureau, Ms. Scott's funds have been returned to her.

48. Defendants had a warrant for the no-knock raid, signed by a judge on March 12, 2021, based upon an affidavit sworn to by defendant Chowdhury.

49. The NYPD has provided conflicting accounts of the basis for the raid.

50. On April 13, 2021, a NYPD spokesperson told CBS-TV that there its "investigative evidence" was based upon "numerous complaints by the community about drug sales at the location." https://newyork.cbslocal.com/2021/04/13/debra-cottingham-nypd-no-knock-warrant/

51. However, two days later, on April 15, 2021, NYPD Assistant Chief Joseph Kenny told a different story at a news conference, claiming that crack had been sold at the location, apparently to a confidential informant (CI), on four occasions this year – "three times by the suspect [Shawnee] and once by his girlfriend," and that the police knew with certainty that "their suspect [Shawnee] lives there." Https://www.nydailynews.com/new-york/nyc-crime/ny-nypd-no-knock-warrants-20210415-rayb7vqu55ew7hhh3o7or63uz4-story.html.

52. Shawnee has not been arrested.

53. No female companion of Shawnee has been arrested.

54. Ms. Cottingham has stayed at home virtually around-the-clock during the Covid-19 pandemic except for brief outings to local stores.

55. It is inconceivable that Shawnee, who does not possess keys to the house, could have been there and engaged in any drug transactions.

56. Defendant Detective Bourne has been the subject of 21 complaints to the Civilian Complaint Review Board, with the agency substantiating nine of the 42 total allegations of wrongdoing in those complaints. He lost 15 days in one excessive force case and 15 more in a case for which he was found guilty of an improper stop-and-frisk and house search, as well as abuse of authority. Bourne is also named in 10 lawsuits from civilians against the city and NYPD, one pending plus nine that have settled for a total of $440,000. https://www.nydailynews.com/new-york/nyc-crime/ny-retired-correction-officer-no-knock-nypd-raid-20210412-nweshmjo2jdpjhuxyrkcy3n2v4-story.html

57. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Fourth Amendment to the Constitution of the United States, Article I, §12 of the Constitution of the State of New York, and numerous NYPD regulations, that the only residents of the house were a retired corrections officer licensed to possess two guns, and her daughter.

58. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Constitution of the United States, the Constitution of the State of New York, and numerous NYPD regulations, that neither of the residents had ever been observed by any law enforcement officers to have engaged in any illegal conduct justifying the raid, and that neither had any criminal records of any kind or any outstanding warrants.

59. In light of the facts that (i) no arrests were made, (ii) no contraband sought by the officers as justification for the raid was recovered (iii) the warrant-issuing magistrate was not told that the alleged target of the raid has not lived in the house for approximately three years, has no

access to the house, and no longer has any relationship of any kind with the raided house or any of its occupants, and (iv) the warrant-issuing magistrate was not told that the only residents of the house were a retired corrections officer and her daughter, neither of whom had ever been observed by any law enforcement officers to have engaged in any illegal conduct justifying the raid, and that neither of whom had any criminal records of any kind or any outstanding warrants, the raid violated plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of New York, and the laws of the State of New York and the City of New York.

60. If the search warrant was in fact based upon the allegations of a confidential informant, the CI and the CI's allegations were necessarily grossly unreliable.

61. In light of the gross inaccuracy in the information upon which the warrant was obtained, it is inconceivable that the police could have engaged in any significant inquiry to verify the reliability of any CI and any CI's allegations, and could have provided the warrant-issuing magistrate with any truthful and verified information about the allegations upon which the warrant was sought.

62. Police officers are not shielded from liability when a search warrant is obtained by falsehoods or by deliberately or recklessly withholding relevant information from the issuing magistrate, about he reliability of the allegations upon which the warrant is being sought, such as information indicating the unreliability of the confidential informant (CI) and the CI's allegations, or information indicating the absence of any significant inquiry by the police verifying the reliability of the CI and the CI's allegations. *McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014); *Southerland v. City of New York*, 680 F.3d 127, 144-148 (2d Cir. 2012), *rehearing en banc denied*, 681 F.3d 122 (2d Cir 2012), *cert. denied*, 568 U.S. 1150 (2013); *Golino v. City of New Haven*, 950

F.2d 864, 870-72 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992); *Cook v. City of New York*, 243 F. 3d 332, 345-46 (EDNY 2017) (Pollak, U.S.M.J.).

63. The search warrant was necessarily obtained and executed in violation of numerous guidelines and requirements issued by the Police Commissioner in the wake of the death of Ms. Alberta Spruill during a raid in Harlem in May 2003, including, but not limited to:

(i) the pre-execution investigation and documentation required by NYPD Patrol Guide (PG) 212-75, including, but not limited to, investigation and documentation into who lives in the dwelling, whether any of the residents have any criminal records or outstanding warrants, and whether any of the residents are licensed to possess firearms;

(ii) the Search Warrant Execution guidelines (PG 221-17);

(iii) the Confidential Informants Guidelines (PG 212-68);

(iv) the Formal Post-Execution Critique (PG 212-106) that must be prepared by the Commanding Officer who supervised execution of the warrant and the review of that Critique by overhead command -- especially important in cases where execution of a search warrant produces no contraband sought by the officers as justification for the raid and no arrests whatsoever;

(v) Commissioner Kelly's report to the Mayor on the *Spruill* case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02); and

(vi) Commissioner Kelly's testimony before the New York City Council Committee

on Public Safety (June 4, 2003) at 14, 16-17, 33-34, 41, 48, 49, 88-89, and 105.

64. The raid has left plaintiffs shattered and frightened.

65. Plaintiff Cottingham has been under the care of a psychiatrist since the raid and has been diagnosed as suffering from Posttraumatic Stress Disorder-Chronic, Panic Disorder and Major Depressive Order-Moderate to Severe.

66. Plaintiffs are fearful that if the police could do this sort of thing to them once it could easily happen again.

67. Plaintiffs are scared that they have no defense against this kind of police intrusion into the sanctity of a dwelling.

### FIRST CLAIM FOR RELIEF

68. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67.

69. Defendants Chowdhury, Bourne and John and Jane Does 1-10, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York, and the laws of the State of New York and the City of New York.

### SECOND CLAIM FOR RELIEF

70. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67 and 69.

71. The conduct toward plaintiffs alleged herein constituted an illegal entry into and search of a dwelling, false imprisonment of plaintiff Cottingham, destruction and seizure of property, and employee negligence.

72. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### THIRD CLAIM FOR RELIEF

73. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-67, 69, and 71-72.

74. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law, city law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 15, 2021

/s/ Joel Berger
**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**